DORIS GUTHRIE, Plaintiff-Appellant, v. TED ZIELINSKI *et al.*, Defendants-Appellees.

Second District No. 2—88—0651

Opinion filed June 28, 1989.

Ralph R. Hruby, of Carl F. Schroeder, Ltd., of Wheaton, for appellant.

Thomas R. Weiler and John Edwin Norton, both of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

The plaintiff, Doris Guthrie, appeals from the trial court's denial of her motion for partial summary judgment on her complaint under the Animal Control Act (the Act) (Ill. Rev. Stat. 1987, ch. 8, par. 366); she also appeals from the trial court's granting of the defendants' motion for summary judgment. On appeal, the plaintiff contends that the trial court erred in finding that the doctrine of assumption of risk barred her recovery under the Animal Control Act. With regard to her own motion for partial summary judgment, the plaintiff contends that the trial court erred in finding a genuine issue of material fact, namely, whether the plaintiff had provoked the animal that attacked her, thus precluding her from judgment as a matter of law.

The relevant facts before the trial court in its consideration of the parties' opposing motions for summary judgment are as follows. The plaintiff, the 32-year-old daughter of the defendants, Ted and Margaret Zielinski, was in the habit of visiting her parents approximately four times a month or more. She had a key to their house and customarily entered through a garage door without knocking or announcing her entry. Sometime in May 1986, the defendants obtained a large dog named Jasper from an acquaintance who warned them that the dog was difficult to control. For approximately the first week the defendants owned Jasper, the acquaintance had to return daily to feed the dog. The first time the plaintiff ever saw the dog, he was kept in a 100-foot dog run behind the defendants' garage. As she approached the dog run, the dog commenced barking "like he was ready to *** kill someone" and frightened the plaintiff so that she ceased her attempts to be friendly with him. Over the course of the next several

months, the plaintiff continued to visit her parents on a regular basis, and the dog's unfriendly attitude toward her never changed.

Ordinarily, the defendants kept the dog in the dog run, but on occasion Mrs. Zielinski allowed Jasper inside and fed him in the kitchen. The parties agree, however, that prior to the incident in question, Jasper was never in the house when the plaintiff came to visit.

On October 15, 1986, the plaintiff went to her parents' home after work and entered through the garage door as usual. Upon entering, she saw her parents in the kitchen and greeted them by saying "hello." They greeted her in return and were very happy to see her. The plaintiff then turned to close the door and check the time on a wall clock. In a matter of seconds, the dog, which had apparently been in the kitchen, leaped onto the plaintiff, biting and severely mauling her right leg above the knee. Mrs. Zielinski and the plaintiff's son assisted her to a car and transported her to a hospital where she received treatment. The plaintiff remained hospitalized for three days and received intravenous drugs for the prevention of infection. During her recovery, a period of approximately six weeks, she was unable to care for her infant daughter and could not return to her part-time job as housekeeper. Ultimately the wound healed but left serious scarring and occasional pain in the plaintiff's right leg.

The plaintiff filed a complaint against the defendants pursuant to the Animal Control Act, alleging that the defendants were the owners of an animal which attacked her, without provocation, while she was peaceably conducting herself in a place where she had a legal right to be. On the basis of depositions taken of all parties, plaintiff filed a motion for summary judgment, claiming that there were no genuine issues of material fact and that she was entitled to judgment as a matter of law.

In opposition, the defendants filed a motion for summary judgment based on the affirmative defense of assumption of risk. The defendants asserted that the plaintiff knew of the dog's unfriendly attitude toward her, yet she entered the defendants' house unannounced and provoked the dog by her presence. The defendants' assertion was based on *Harris v. Walker* (1988), 119 Ill. 2d 542, in which the supreme court considered the Act with regard to a plaintiff who rented a horse at a stable and signed a release containing an exculpatory clause prior to taking the horse out for a ride. The high court concluded that the plaintiff's relationship to the defendant stable owner precluded him from asserting coverage under the Act. The supreme court stated:

"We therefore hold that where a person rents a horse and un-

derstands and expressly accepts the risks of using the horse, he cannot recover damages from the person who rented the horse to him under the Act." 119 Ill. 2d at 548.

In the case at bar, the trial court accepted the defendants' argument based on *Harris v. Walker* and granted their motion for summary judgment, stating:

"[A]pparently the Supreme Court is agreed in enunciating the doctrine of assumed risk; is giving credence to notice and apparently playing around with a doctrine of surprise, or lack thereof."

The trial court further denied the plaintiff's motion for summary judgment, finding that a question of fact existed as to whether the attacking dog had been provoked. The plaintiff's timely appeal ensued.

 Initially, we observe that the purpose of summary judgment is not to try an issue of fact but to determine whether there are any issues of material fact. (*Golden v. Marshall Field & Co.* (1985), 134 Ill. App. 3d 100.) Summary judgment is a drastic measure to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt the right thereto. (*Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107.) Summary judgment should be awarded with caution so as not to preempt the right to trial by jury or the right to present fully a factual basis for a case when a material dispute may exist. *W.H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87.

The Animal Control Act provides in pertinent part:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." Ill. Rev. Stat. 1987, ch. 8, par. 366.

 The statute thus reduces the burden upon a plaintiff by eliminating the common-law requirement that an injured person prove and plead that an animal owner knew or should have known of his animal's propensity to injure or attack people. (See *Harris*, 119 Ill. 2d at 547.) Even so, a plaintiff must still prove four elements in order to sustain a cause under the Act, namely: (1) injury caused by an animal owned by the defendant; (2) attack or injury by the animal without provocation; (3) peaceable conduct on the part of the injured person (the plaintiff); (4) the plaintiff is in a place where he lawfully has a right to be. (Ill. Rev. Stat. 1987, ch. 8, par. 366; see also *Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 365.) In short, while a plaintiff

need not prove a defendant's negligence under the Act, the statute does not impose absolute liability on animal owners. See *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 161-62.

In the instant case, there is no dispute between the parties as to the ownership of the dog, nor do the defendants dispute that the plaintiff was peaceably conducting herself at the time of the attack. The defendants do argue, however, that the plaintiff did not have a legal right to be in her parents' house and her presence there provoked the animal.

■ Despite the instant defendants' assertions to the contrary, we find that the plaintiff was lawfully on the premises at the time the defendants' dog attacked her. (See *Messa v. Sullivan* (1965), 61 Ill. App. 2d 386.) The plaintiff, although an adult who resided elsewhere, was in the habit of visiting the defendants, her parents, on a regular basis; she possessed a key to the defendants' home, and such possession was of a long-standing nature. It was her custom to enter the garage and to neither knock nor announce her entry, and she had never been requested to do so by the defendants. The defendants offer no basis, and we find none, for their assertion that her presence in their home was anything other than lawful.

■ With regard to the issue of provocation, we find *Stehl v. Dose* (1980), 83 Ill. App. 3d 440, dispositive. Therein plaintiff argued that the jury's verdict was against the manifest weight of the evidence. The *Stehl* court stated:

> "As we analyze the evidence in the record, plaintiff clearly established that he was behaving in a peaceable manner, that the owner of the property had invited plaintiff to come upon the premises for the purpose of taking the dog, that defendant's dog attacked, and that plaintiff was injured. However, whether plaintiff's conduct amounted to provocation is not clear. Reasonable men would differ, and accordingly, we view this issue as one especially suited to jury determination." (83 Ill. App. 3d at 443.)

Similarly here, we find that reasonable people could differ on the issue of whether plaintiff, despite behaving peaceably and lawfully being at her parents' home, had provoked the attack. Thus, there remains a disputed material fact for a trier of fact to determine, *i.e.*, whether plaintiff provoked the dog to attack her. Consequently, the trial court's denial of the plaintiff's motion for partial summary judgment was correct.

We turn now to consideration of the trial court's order granting the defendants' motion for summary judgment on the ground that the

plaintiff assumed the risk of the injury she received. We note at the outset that the trial court granted the defendants' motion based on its interpretation and application of *Harris v. Walker* (1988), 119 Ill. 2d 542, which we have discussed previously. The trial court stated:

> "In connection therewith, the Court notes that apparently the Supreme Court [in *Harris v. Walker*] is agreed in enunciating the doctrine of assumed risk; is giving credence to notice and apparently playing around with a doctrine of surprise, or lack thereof."

As noted above, the supreme court did indeed apply the principles of the doctrine of assumption of risk. We hasten to point out, however, that the plaintiff in *Harris* expressly assumed all risks, *i.e.*, those inherent in the activity, and those arising from the defendant's negligence, when he signed a specific exculpatory agreement. In short, Harris explicitly released the defendant from any and all liability for injuries he might sustain during the specified activity, *viz.*, horseback riding.

The facts presented in *Harris* are easily distinguishable from those of the instant case. Further, the doctrine of express assumption of risk has no applicability to the instant facts. The plaintiff states correctly that the trial court failed to consider the obvious dissimilarity between these factual patterns and thus improperly applied the *Harris* holding.

We agree with the plaintiff's further assertion that the trial court's overly broad interpretation and application of the *Harris* decision unilaterally and improperly expanded the defense of assumption of risk to an extent never recognized by the Illinois Supreme Court or the appellate court of this district. As the supreme court in *Harris* stated:

> "The plaintiff's relationship to the defendant *in this case* excluded the plaintiff from the coverage of the [Animal Control Act]. Plaintiff rented the horse from defendant's stable and claimed to fully understand and accept the risks of horseback riding. *By establishing this relationship*, the plaintiff took himself out of the class of persons the legislature intended to protect." (Emphasis added.) (119 Ill. 2d at 547-48.)

The supreme court's narrow and explicit holding in *Harris* flows directly from its recognition of the unique contractual relationship between the plaintiff and the defendant. Here there was no such contractual relationship between the parties.

The trial court's characterization of the supreme court's decision in *Harris* as "enunciating the doctrine of assumed risk *** giving

credence to notice and apparently playing around with a doctrine of surprise" fails to recognize the limited nature of the concept of assumption of risk in this State. The supreme court has long rejected arguments to expand the doctrine and has said:

> "Evaluation of the intrinsic merits of the concept of assumption of risk indicates that no expansion of that concept in Illinois law is warranted. The action of the trial court in giving the instruction on assumption of risk here, *where there was neither express consent nor an employment or contractual relationship* \*\*\*, constituted reversible error." (Emphasis added.) *Barrett v. Fritz* (1969), 42 Ill. 2d 529, 536-37.

We determine that the limitation on assumption of risk is fully applicable to the case at bar, where the plaintiff's action is based neither on a negligence theory nor on strict liability but is a curious statutory hybrid. See *Harris*, 119 Ill. 2d at 547 (under the Act a plaintiff need not plead or prove an animal owner's negligence); *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d at 158 (the legislature did not intend to impose strict liability on animal owners with the passage of the Act).

In conclusion, where the defendants have failed to present any evidence that the plaintiff expressly relieved them from any liability for injuries inflicted by their dog, and in the absence of evidence of a contractual or employment relationship between the parties, we determine that the doctrine of assumption of risk is inapplicable. Accordingly, the trial court's granting of the defendants' motion for summary judgment was error.

The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

UNVERZAGT, P.J., and NASH, J., concur.