# Illinois Official Reports

## Appellate Court

---

### *Crosson v. Ruzich*, 2018 IL App (5th) 170235

---

| | |
|---|---|
| Appellate Court Caption | PAULETTE CROSSON, Plaintiff-Appellant, v. BOB RUZICH and PAM RUZICH, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-17-0235 |
| Filed | July 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Johnson County, No. 15-L-3; the Hon. Joseph Jackson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tyler N. Dihle, of Prince Law Firm, of Marion, for appellant.<br><br>Charles E. Schmidt and Phillip G. Palmer Jr., of Brandon & Schmidt, of Carbondale, for appellees. |
| Panel | JUSTICE CATES delivered the judgment of the court, with opinion.<br>Presiding Justice Barberis and Justice Moore concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Paulette Crosson, sought damages from defendants, Bob Ruzich and Pam Ruzich, for personal injuries sustained after she fell while on defendants' property. The circuit court entered summary judgment in favor of defendants on plaintiff's negligence claim and dismissed plaintiff's claim alleging defendants violated the Animal Control Act (Act) (510 ILCS 5/16 (West 2012)). Plaintiff appeals from the circuit court's orders. We affirm.

¶ 2    In 2012, plaintiff was a certified nursing assistant, providing home health care services. In August and September 2012, plaintiff provided home health care to Pam Ruzich's grandmother, who resided at defendants' home. Plaintiff visited defendants' home to provide health care services on eight occasions, each time entering and exiting the home through the front entrance. Plaintiff accessed the front door by walking up several stairs leading to a front porch. The top stair was level with the porch floor.

¶ 3    While plaintiff was caring for Pam's grandmother, plaintiff and Pam became friends. During the fall of 2012, plaintiff made two social visits to defendants' home, each time accessing the home by walking up the front stairs, onto the porch, and into defendants' home.

¶ 4    On March 19, 2013, plaintiff was a guest at defendants' home. As she had done on prior occasions, plaintiff walked up the stairs leading to the porch and entered defendants' home. Plaintiff stayed for a short while and then exited the house. When plaintiff exited the home, while standing on the top step of the porch stairs, defendants' dog, Moxie, approached plaintiff and stood to plaintiff's left. Plaintiff then began petting Moxie. In her deposition, plaintiff described what happened next as follows:

"Q. Moxie didn't push you off the porch, did she?

A. She did not push me. No.

Q. So while you were petting Moxie, looking away from the house, what happened?

A. Well, I just moved my foot over. I mean I don't know. I was on the edge just to get my balance a little more and it started to go off the edge.

Q. Okay. Your foot went off the edge?

A. A little bit. Yes.

Q. Okay. I see. So you took a little bit of a step to keep your balance and in the course of doing that your foot went off the edge?

A. Yes.

* * *

Q. Nothing about the condition of the porch caused you to lose your balance; am I right?

A. No.

Q. Nothing about the condition of the step caused you to lose your balance?

A. No.

Q. Nothing about the dog caused you to lose your balance; am I right?

A. Well, she was close to me. Yeah.

Q. So the dog caused you to lose your balance?

A. Well, she caused me to probably put my foot over the edge a little more, you know, so that—

Q. Okay.

A. Because, I mean, you know animals, when you're petting them, they get closer to you.

Q. Right.

A. I want more. I want more. Yeah.

Q. So as the dog was enjoying you petting her—

A. Uh-huh.

Q. —you would have moved your foot and in the course of moving your foot it went off the edge?

A. Yes.

Q. Okay. I understand. So I want to make sure I'm clear on this. Nothing about the condition of the property, the step, porch, nothing about the condition of the property had anything to do with your fall; am I right?

A. No.

\* \* \*

Q. Okay. Thank you. The only thing that might have contributed to your fall is Moxie was enjoying being petted and was nuzzling up to you and in the course of doing that you stepped off the edge of the step; is that correct?

A. Yeah. My foot went over a little bit off of the edge."

¶ 5 When plaintiff's foot went over the edge of the top stair, she stretched to avoid stepping on a flowerpot and landed in an elevated rock garden below the porch. As a result of her fall, plaintiff claimed she sustained severe injuries to her right foot.

¶ 6 On February 23, 2015, plaintiff filed a one-count complaint against defendants alleging negligence. Defendants filed a motion pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), asserting the complaint failed to allege facts establishing the existence of an unreasonably dangerous condition that would give rise to a duty and for which liability could be asserted. On April 10, 2015, plaintiff filed a first amended complaint. Defendants filed their answer denying liability on April 27, 2015. As a part of their responsive pleading, defendants also raised affirmative defenses.

¶ 7 On February 5, 2016, plaintiff filed a second amended complaint. Count I of plaintiff's complaint realleged her negligence allegations. Count II of the second amended complaint alleged defendants were liable pursuant to the Act. In count II, plaintiff alleged that defendants' dog "moved into Plaintiff and knocked her off the steps into the rock garden." On July 15, 2016, defendants moved to dismiss plaintiff's claim under the Act pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2016)), asserting the claim was barred by the statute of limitations. Defendants also asserted that plaintiff had failed to allege any facts that would give rise to liability under the Act, as there were no allegations that plaintiff was injured as a result of an attack or injury caused by defendants' dog. Therefore, defendants claimed plaintiff's second amended complaint should also be dismissed pursuant to section 2-615 of the Code.

¶ 8    On November 2, 2016, defendants moved for summary judgment on plaintiff's negligence claim, asserting there were no dangerous conditions present on defendants' property or, alternatively, that even if there were any dangerous conditions present, the conditions were open and obvious to plaintiff. As such, defendants claimed there was no duty owed to plaintiff. In her response to defendants' motion for summary judgment, plaintiff claimed that a question of fact remained as to whether she was distracted by the dog at the time she was injured and that, therefore, the "distraction exception" to the open and obvious rule applied.

¶ 9    On January 27, 2017, the circuit court entered an order granting defendants' motion for summary judgment on plaintiff's negligence claim raised in count I of her second amended complaint. The circuit court found that plaintiff admitted in her deposition that there was nothing about the condition of the premises, including the steps or the porch, that caused or contributed to her fall. The court further found that plaintiff's conduct of petting defendants' dog immediately prior to her fall was, at most, a voluntary distraction, and not a foreseeable cause of plaintiff's injury. That same day, the circuit court entered a second order granting defendants' motion to dismiss count II of plaintiff's second amended complaint pursuant to section 2-615. The court found plaintiff failed to state a claim pursuant to the Act, in that she did not set forth facts alleging an attack or injury by defendants' dog. The court dismissed count II without prejudice and granted plaintiff leave to replead.

¶ 10    On February 24, 2017, plaintiff filed a third amended complaint against defendants. In count I, plaintiff realleged her negligence claim in order to avoid waiving her right to appeal on that count. Plaintiff amended count II of her complaint to allege that while she was petting Moxie, "the dog moved into Plaintiff, causing her to lose her footing and fall off the step into a rock garden," thereby causing her injury.

¶ 11    Defendants filed another motion to strike, dismiss, or make more definite and certain pursuant to section 2-615, asserting plaintiff's most recent allegations were, in substance, the same as those contained in her prior complaint and contained no additional facts that would give rise to a claim under the Act. The circuit court entered a second order on June 9, 2017, dismissing count II with prejudice. The court found that plaintiff failed to set forth any additional facts, as compared to plaintiff's second amended complaint, that would give rise to a cause of action under the Act. As before, the court also reiterated that plaintiff's third amended complaint failed to allege any facts that showed "an attack or injury by the dog."

¶ 12    On appeal, plaintiff contends the circuit court erred in granting summary judgment in favor of defendants on her negligence claim because there was a question of fact as to whether plaintiff was distracted by defendants' dog. Defendants assert they were entitled to summary judgment on plaintiff's negligence claim because they did not owe plaintiff a duty, in that there were no dangerous conditions present on their property and, alternatively, that any alleged dangerous conditions were open and obvious.

¶ 13    Summary judgment is proper when the pleadings, affidavits, depositions, admissions, and exhibits on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 38-39 (2003). The record is viewed in the light most favorable to the nonmoving party. *Rexroad*, 207 Ill. 2d at 39. This court reviews a grant of summary judgment *de novo*. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

¶ 14    To sustain a claim for negligence, the plaintiff must demonstrate that the defendant owed plaintiff a duty of care and defendant breached that duty, which proximately caused plaintiff's

injury. *Forsythe*, 224 Ill. 2d at 280. Whether the defendants had a duty is a question of law for the court to decide. *Forsythe*, 224 Ill. 2d at 280.

¶ 15 A landowner has a duty to use reasonable care to maintain his premises in a reasonably safe condition. *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141 (1990). Therefore, a property owner must remove or correct any dangerous condition present on his premises or provide a warning of the dangerous condition to invitees. *Ward*, 136 Ill. 2d at 141-42. A landowner, however, is generally not required to foresee and protect others against an injury if a potentially dangerous condition is open and obvious. *Rexroad*, 207 Ill. 2d at 44. Open and obvious conditions are those where the condition and risk are apparent and would be recognized by a reasonable person exercising ordinary perception, intelligence, and judgment. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 16.

¶ 16 There are two limited exceptions to the rule that a property owner has no legal duty to protect others from open and obvious conditions, the "distraction exception" and the "deliberate encounter exception." *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002). Under the distraction exception, a landowner owes an invitee a duty of due care if he has a reason to expect that the invitee's attention may be distracted, so that he will not discover the obvious condition, will forget about the condition, or will fail to protect himself against it. *Rexroad*, 207 Ill. 2d at 44-45; *Sollami*, 201 Ill. 2d at 15. Under the distraction exception, there must be some circumstance present, reasonably foreseeable by the defendant, which required the plaintiff to divert his attention from the open and obvious condition or otherwise prevented him from avoiding the risk. *Bruns*, 2014 IL 116998, ¶¶ 28-29. A defendant is not responsible for anticipating and protecting against voluntary distractions solely of the plaintiff's own creation. *Bruns*, 2014 IL 116998, ¶¶ 28-29.

¶ 17 The underlying facts are not in dispute, and the only issue is whether, under the present facts, defendants owed a duty to plaintiff. In her second amended complaint, plaintiff alleged defendants' property was unsafe because the porch did not have a railing and there was a rock garden below the porch. Plaintiff also alleged defendants failed to warn her of these unsafe conditions.

¶ 18 Plaintiff, however, repeatedly admitted during her deposition that nothing about the condition of defendants' property, including the porch or the stairs, caused her to lose her balance or contributed to her fall. Plaintiff also testified during her deposition that she never noticed any dangerous or concerning conditions with the porch or stairs during any of her visits to defendants' property. In light of plaintiff's admissions that there were no dangerous conditions on the property that contributed to her fall, it cannot be said that defendants owed plaintiff a duty to remediate or warn plaintiff of a dangerous condition or that their failure to do so caused plaintiff's injury.

¶ 19 On appeal, plaintiff does not challenge the circuit court's ruling on this issue. Instead, plaintiff only seeks review of the circuit court's finding that her act of petting defendants' dog was a voluntary distraction. The nature of plaintiff's alleged distraction, however, is relevant only if there was an open and obvious dangerous condition on the property, the absence of which plaintiff does not contest.

¶ 20 Plaintiff has failed to demonstrate that there was a dangerous condition on defendants' property and that defendants owed her a duty of care. Accordingly, there is no basis for us to reach the issue of whether plaintiff's activity of petting Moxie was a voluntary distraction.

Therefore, the circuit court did not err in its finding that there was no genuine issue of material fact, and defendants are entitled to judgment as a matter of law.

¶ 21 Next, plaintiff asserts the circuit court erred in dismissing her claim under the Act because she properly alleged that defendants' dog caused her injury. A section 2-615 motion attacks the legal sufficiency of the complaint, and raises the question of whether the complaint states a cause of action upon which relief can be granted. *Oldendorf v. General Motors Corp.*, 322 Ill. App. 3d 825, 828 (2001). When ruling on the motion, the court may only consider the facts apparent from the face of the pleadings, matters of which the court may take judicial notice, and judicial admissions in the record. *Oldendorf*, 322 Ill. App. 3d at 828. All well-pleaded facts alleged in the complaint, and all reasonable inferences therefrom, are taken as true. *Oldendorf*, 322 Ill. App. 3d at 828. The allegations are construed in the light most favorable to the plaintiff. *Oldendorf*, 322 Ill. App. 3d at 828. We review the circuit court's dismissal of a plaintiff's complaint for failure to state a cause of action *de novo*. *Oldendorf*, 322 Ill. App. 3d at 828.

¶ 22 Section 16 of the Act provides as follows:

> "If a dog or other animal, without provocation, attacks, attempts to attack, or injures any person who is peaceably conducting himself or herself in any place where he or she may lawfully be, the owner of such dog or other animal is liable in civil damages to such person for the full amount of the injury proximately caused thereby." 510 ILCS 5/16 (West 2012).

¶ 23 The purpose of the Act is to encourage the tight control over animals. *Partipilo v. DiMaria*, 211 Ill. App. 3d 813, 816 (1991). While the language of the statute appears absolute, it does not impose strict liability on animal owners. *Partipilo*, 211 Ill. App. 3d at 816.

¶ 24 To sustain a claim under section 16 of the Act, a plaintiff must prove: (1) injury caused by an animal owned by the defendant; (2) lack of provocation; (3) peaceable conduct by the plaintiff; and (4) the presence of the plaintiff in a place where she had a legal right to be. *King v. Ohren*, 198 Ill. App. 3d 1098, 1100 (1990). It is not necessary for the animal to attack, and the plaintiff can recover when any action by the animal causes the plaintiff injury, even if the action is harmless in itself. *Parikh v. Gilchrist*, 2017 IL App (1st) 160532, ¶ 26.

¶ 25 Defendants do not dispute that they owned the dog, that plaintiff did not provoke the dog, and that plaintiff was peaceably conducting herself in a place where she had a lawful right to be. The sole issue in dispute is whether plaintiff's injury was the result of the dog's conduct.

¶ 26 An animal is the proximate cause of an injury only when the injury was caused by the conduct of the dog and not by the plaintiff's independent act. *King*, 198 Ill. App. 3d at 1101. The dog must engage in some affirmative behavior that causes injury to the plaintiff and it is insufficient if the dog is an " 'inert or passive force.' " *Coe v. Lewsader*, 2016 IL App (4th) 150841, ¶ 15 (quoting *Bailey v. Bly*, 87 Ill. App. 2d 259, 262 (1967)). The dog must make some overt act toward the plaintiff in order for liability to attach. *Coe*, 2016 IL App (4th) 150841, ¶ 15; *Bailey*, 87 Ill. App. 2d at 262. Not every overt act, however, is sufficient to establish liability. *King*, 198 Ill. App. 3d at 1102. Although proximate cause of an injury is usually a question of fact, it is a question of law when the facts are undisputed and there can be no difference in the judgment of reasonable people as to the inferences to be drawn from them. *Parikh*, 2017 IL App (1st) 160532, ¶ 28.

¶ 27     In this case, plaintiff alleged she was petting Moxie when "the dog moved into [her], causing her to lose her footing and fall off the step into a rock garden." In her deposition, plaintiff clarified that other than her own act of petting Moxie, the dog never came into contact with plaintiff but simply inched closer to plaintiff to encourage plaintiff to continue petting her. Plaintiff then readjusted her position and, in doing so, stepped over the edge of the top stair and lost her balance. Taking plaintiff's allegations as true, and construing the facts in the light most favorable to plaintiff, plaintiff has failed to allege facts raising a claim under the Act.

¶ 28     We find the case before us most analogous to *King*, 198 Ill. App. 3d 1098. In *King*, the defendant's dog walked next to the plaintiff as she was carrying a pot of boiling water from the stove to the sink. As the plaintiff went to put her foot down, she stepped backward to avoid the dog and scalded herself. *King*, 198 Ill. App. 3d at 1102. On appeal, the court rejected plaintiff's claim that the dog caused her injuries because the dog was in her way and she was forced to alter her step to avoid it. *King*, 198 Ill. App. 3d at 1102. Although the dog had been moving shortly before the plaintiff put her foot down, the court noted it was " 'the nature of dogs to move.' " *King*, 198 Ill. App. 3d at 1102. Instead, the court found the dog was a passive force, which "did not advance toward her and was acting in a predictable fashion based upon plaintiff's previous experience." *King*, 198 Ill. App. 3d at 1102. The court found an animal is a passive casual force and not the proximate cause of an injury if it stands still or moves away from a person in a usual, predictable manner. *King*, 198 Ill. App. 3d at 1102.

¶ 29     While the case *sub judice* differs slightly from *King*, in that Moxie was moving toward plaintiff, as opposed to standing still, Moxie's behavior, as described by plaintiff, does not suffice as an overt act imposing liability. The complaint and record indicate that Moxie adjusted her position to get closer to plaintiff in response to plaintiff's show of affection. Plaintiff's deposition testimony indicates she was familiar with Moxie and knew that Moxie's behavior of inching toward plaintiff in response to being petted was consistent and predictable behavior not just for Moxie but for domesticated animals in general. Plaintiff did not allege, and nothing in the record supports a finding, that Moxie was out of control or that her actions were startling, irregular, or erratic. Moxie's conduct in this case was not the type of behavior contemplated by the Act, and imposing liability under these facts would amount to strict liability for dog ownership, a result not intended by the statute.

¶ 30     The pleadings and deposition indicate Moxie was a passive casual force and that it was plaintiff's independent action of moving her foot to readjust her balance that caused her to lose her footing and fall. The fact that Moxie was benignly moving while standing near plaintiff does not translate into a finding that Moxie's movement caused plaintiff's injury. Plaintiff has failed to allege any facts supporting a finding that Moxie was the proximate cause of plaintiff's injuries, and the circuit court did not err in dismissing plaintiff's claim under the Act.

¶ 31     Affirmed.